United States District Court
District of Massachusetts

```
─────────────────────────────────
                                 )
CHARLES J. MARTINELLI,           )
                                 )
        Plaintiff,               )
                                 )
        v.                       )   Civil Action No.
                                 )   17-12163-NMG
THE BANCROFT CHOPHOUSE, LLC,     )
                                 )
        Defendant.               )
                                 )
─────────────────────────────────
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from federal and state employment discrimination claims brought by Charles Martinelli ("Martinelli" or "plaintiff"), a former employee of the defendant, The Bancroft Chophouse, LLC ("The Bancroft" or "defendant"). Martinelli alleges that the managers of The Bancroft subjected him to sexual harassment and retaliation which ultimately caused him to terminate his employment with defendant. He now brings claims for 1) hostile work environment, 2) quid pro quo sexual harassment and 3) retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., and M.G.L. c. 151B, § 4.

Before the Court is defendant's motion for summary judgment (Docket No. 22). For the reasons that follow, that motion will be allowed.

I.  **Background**

   A.  **The Parties**

Martinelli lives in North Reading, Massachusetts. The Bancroft is a steakhouse restaurant located in Burlington, Massachusetts. In May, 2014, plaintiff began working as a server at The Bancroft and he worked there for approximately five months before terminating his employment in early October, 2014.

At all relevant times, Martinelli worked as a server at the restaurant. On occasion, he was assigned to work as a "closing server". Closing servers are responsible for attending to the customers who come in near closing time and after the other servers go home for the evening. They are also responsible for confirming that the other servers have completed all their work and have reset their tables.

   B.  **The Incident**

On Saturday, September 13, 2014, Martinelli was scheduled to work as a closing server along with one of his co-workers, Angela Michaels. Colleen Seznec, plaintiff's manager, was also working that day. At some point early in Martinelli's shift, he observed Seznec and Michaels having a conversation in the dining room. Shortly thereafter, plaintiff alleges that Seznec approached him and told him that she and Michaels had been discussing which employee they would like to sleep with. She

then told Martinelli that he would be her choice. Martinelli responded that he was "gay and, basically, you have a better chance of seeing a unicorn than that ever happening" and she just laughed it off. Plaintiff concedes that 1) he did not consider Seznec's comment to be offensive at the time or think about it too much and 2) Seznec never said anything else that day or on any other occasion that he considered to be offensive.

Later in the shift, Seznec spoke to Martinelli about his failure to perform all of his work responsibilities and his over-concentration on music. Martinelli characterizes those interactions as uncharacteristically aggressive on the part of Seznec. Finally, Seznec asked Martinelli to come into work the next day, Sunday, which was not his regular day. Martinelli took that request as a reprimand.

Later that night, both plaintiff and Michaels left the restaurant early without checking out the other servers. There is a dispute between the parties as to whether the closing manager knew about plaintiff's early departure but Martinelli concedes that 1) he left early, 2) he could not remember specifically whether he had asked permission to do so and 3) he could not remember who he had asked to take over for him.

### C. The Complaint

The following morning, September 14, 2014, Martinelli reported to the restaurant for the brunch shift. He was

immediately told by the manager that he was suspended from work for leaving early the previous evening without completing his closing duties. He was also informed that he would not be allowed to return to work until he spoke with Richard Brackett, the General Manager of The Bancroft. Michaels was also suspended for leaving the restaurant early without completing her closing duties.

Martinelli met with Brackett and Laura Ferry, the Human Resources Manager, on September 18, 2014, to discuss his suspension. During that meeting, Brackett told plaintiff that he was being held responsible for not finishing his closing shift on September 13 and that his discipline was suspension for one shift which had been served. Martinelli signed a document reflecting that he had left the restaurant early without completing his closing duties.

During that meeting, Martinelli told Brackett and Ferry about the sexual comment that Seznec had made to him on September 13. The Bancroft immediately initiated an investigation into plaintiff's allegations. That same day, Brackett met with Seznec who told him a different version of the subject conversation. According to Seznec, she had only told Michaels that she thought Martinelli was handsome and it was Michaels who had relayed that comment to plaintiff.

The next day, on September 19, 2014, Martinelli met with Seznec, Brackett and Ferry. At that meeting, Seznec apologized to Martinelli for the inappropriate remark and told him that it would not happen again. Martinelli accepted her apology and did not ask The Bancroft to take any further action with respect to his complaint. The Bancroft concluded that the situation had been resolved and informed plaintiff that he should contact Human Resources immediately if any subsequent incidents of alleged harassment or retaliation were to arise.

**D.  Subsequent Conduct**

Plaintiff alleges that he was thereafter subjected to "an overall uncomfortable feeling" when he would walk into the restaurant and felt as though he was being ostracized by The Bancroft management. The only specific incident that Martinelli can recall, however, involved his request of another manager to help him find a particular wine. The Manager acted annoyed and told him that it was located in the cooler. Martinelli complains generally that he was ignored by the managers and no longer felt like part of a family.

Plaintiff concedes that no member of management, other than Seznec, ever said anything sexually offensive to him and that after his complaint Seznec never made any other sexual comments to him. Furthermore, Martinelli concedes that he made no complaints to Brackett or Human Resources after the meeting on

September 19, 2014, nor did he ever speak to anyone in management about being treated differently after his complaint about Seznec. Martinelli offers no evidence to establish that the other managers were even aware of his complaint about Seznec.

On October, 10, 2014, Martinelli interviewed with another restaurant and was hired that same day. He resigned his employment with The Bancroft the following day, approximately two weeks after he had submitted his complaint about Seznec. He began working at the new restaurant shortly thereafter.

**E.   Procedural History**

At some point after terminating his employment with The Bancroft, Martinelli filed a claim with the Massachusetts Commission Against Discrimination ("the MCAD") for sexual harassment. In that complaint, he alleged hostile work environment, retaliation and constructive discharge.

The MCAD found a lack of probable cause on all three counts and dismissed Martinelli's claim. Among the MCAD's findings were that 1) even if taken as true, plaintiff's allegations with respect to a hostile work environment were insufficiently severe or pervasive to alter the conditions of his employment, 2) there was insufficient evidence that the conduct of the managers was retaliatory and 3) plaintiff failed to establish a prima facie

case for constructive discharge because the alleged conduct was not so intolerable as to compel a reasonable person to resign.

In September, 2017, Martinelli filed a complaint for employment discrimination under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., and M.G.L. c. 151B, § 4 in the Middlesex Superior Court. Defendant removed the case to this Court shortly thereafter. In September, 2018, defendant filed a motion for summary judgment.

Defendant asserts that its motion should be allowed because: 1) the alleged conduct was neither severe nor pervasive nor was it subjectively offensive and thus plaintiff cannot sustain his hostile work environment claim; 2) Martinelli cannot establish the elements for quid pro quo harassment; 3) he cannot establish a causal connection between the alleged adverse employment actions and his protected activity in order to prevail on his retaliation claim; and 4) the alleged conduct of the managers was not severe and intolerable to the point of causing a constructive discharge. Martinelli responds that there are genuine issues of material fact and thus summary judgment is inappropriate.

## II. Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

**B.  Employment Discrimination**

**1.  Legal Standard**

Both Title VII and Chapter 151B prohibit employers from discriminating against their employees on the basis of sex. 42 U.S.C. § 2000e-2(a)(1); M.G.L. c. 151B, § 4.  One way that those provisions are violated is by subjecting an employee to an abusive or hostile work environment. Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (citing Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)).  To establish a claim for hostile work environment, a plaintiff must show

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Ponte v. Steelcase, Inc., 741 F.3d 310, 320 (1st Cir. 2014); see also id. at 319 n.9 (acknowledging that the same legal standard applies to claims for hostile work environment brought under both federal and state law).

In assessing whether a work environment is sufficiently hostile or abusive, courts must consider the totality of the circumstances, including 1) "the frequency of the discriminatory

conduct", 2) "its severity", 3) "whether it is physically threatening or humiliating, or a mere offensive utterance" and 4) "whether it unreasonably interferes with an employee's work performance". Harris, 510 U.S. at 23.  A single, isolated incident of harassment, however, is ordinarily insufficient to establish a claim for hostile work environment unless the incident was particularly egregious and the employee must demonstrate how his or her ability to work was negatively affected. See, e.g., Ponte, 741 F.3d at 320 (finding that two incidents of inappropriate physical contact was insufficient to establish a hostile work environment); Pomales v. Celulares, 447 F.3d 79, 83-84 (1st Cir. 2006) (holding that a single incident of nonphysical harassing conduct was insufficient to establish a claim for hostile work environment).

Title VII and Chapter 151B also prohibit quid pro quo sexual harassment.  Under that form of discrimination, an employer or supervisor uses his or her position to extract sexual favors from a subordinate employee or threatens to punish that employee or withhold a benefit if he or she does not comply. Valentin-Almeyda, 447 F.3d at 94; Wills v. Brown Univ., 184 F.3d 20, 29 (1st Cir. 1999) (holding that the district court did not err in not charging the jury on quid pro quo sexual harassment where a professor never said anything about conditioning the student's grade or tutoring services on her

agreement to submit to his sexual advances and the student did not understand the professor to be making such a threat).

Finally, Title VII and Chapter 151B prohibit an employer from retaliating against an employee for opposing an unlawful employment practice, such as by filing a complaint. § 2000e-3(a); M.G.L. c. 151B, § 4.  To establish a claim for retaliation, the plaintiff must show that 1) he engaged in protected conduct, 2) he was subjected to an adverse employment action and 3) there was a causal connection between the protected conduct and the subsequent adverse employment action. Valentin-Almeyda, 447 F.3d at 94 (citing Noviello v. City of Bos., 398 F.3d 76, 88 (1st Cir. 2005)).

To constitute an adverse employment action, the conduct "must materially change the conditions" of plaintiff's employment. Id. at 95.  Under Chapter VII (and likely under Chapter 151B as well), subjecting an employee to a hostile work environment can constitute an adverse employment action for purposes of a retaliation claim. Noviello, 398 F.3d at 89-91. To prove retaliation in the form of a hostile work environment, however, the plaintiff must still establish all the elements for a hostile work environment claim, including severe or pervasive harassment that alter the conditions of employment. See id. at 89.  Rudeness, ostracism or aloofness, standing alone, are insufficient to support a claim for retaliation because such

conduct would not deter a reasonable person from engaging in protected activity. Id. at 92.

To prevail on a retaliation claim, the plaintiff must also establish a but-for causal connection between the protected activity and the adverse employment action. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013). Mere temporal proximity between the plaintiff's complaint and the subsequent adverse action is usually not enough to establish a causal connection unless the plaintiff can also prove that the decisionmaker knew of the protected conduct when he or she engaged in the adverse action. Pomales, 447 F.3d at 85; see also Ponte, 741 F.3d at 322 (noting that temporal proximity is insufficient to establish a causal connection, especially when "[t]he larger picture undercuts any claim of causation" (alteration in original) (quoting Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003))).

### 2. Application

#### a. Hostile Work Environment

Assuming arguendo that Martinelli is a member of a protected class and was subjected to sexual harassment, he has failed to demonstrate that the alleged harassment was sufficiently severe or pervasive to prevail on his claim for hostile work environment. With respect to the alleged comment by Seznec, that single, isolated remark was not sufficiently

-12-

egregious to constitute severe sexual harassment and plaintiff concedes that it was the only instance of alleged sexual harassment by Seznec. Moreover, Martinelli admits that he did not find Seznec's remark to be offensive nor does he allege that it interfered in any way with his work performance.

Similarly, Martinelli fails to demonstrate that the alleged conduct of the other managers was severe or pervasive. He testified that he was subjected to a generally uncomfortable atmosphere at the restaurant and that he felt as though the managers were ignoring or avoiding him. When asked about specific instances of harassment, however, Martinelli could only recall one time when a few of the managers seemed to be annoyed with him when he asked them where the wine was located. That single instance of alleged harassment or a general discomfort falls far short of conduct that is normally required to establish a hostile work environment claim. See Ponte, 741 F.3d at 320-21 (collecting cases demonstrating egregious conduct, such as offensive sexual remarks on a daily basis or persistent inappropriate physical contact). Martinelli does not allege that The Bancroft managers physically assaulted him or made sexual comments to him on a regular basis. Even if he subjectively felt offended by the generally uncomfortable environment at The Bancroft, a reasonable person would not have felt that it was hostile or abusive.

Nor does Martinelli submit that his work performance was negatively affected by the managers' conduct and thus he cannot prove that the conditions of his employment were impacted by the alleged ostracism. For all those reasons, defendant's motion for summary judgment with respect to the claims for hostile work environment will be allowed.

### b. **Quid Pro Quo Sexual Harassment**

Martinelli's claim for quid pro quo harassment also fails because he cannot demonstrate that Seznec or any other superior at The Bancroft attempted to use their position to extract sexual favors from him. While inappropriate, Seznec's comment to plaintiff regarding sexual relations as he recalls it was not a proposition. She did not threaten to penalize plaintiff or to withhold a benefit from him if he did not agree to have sex with her. Cf. Wills, 184 F.3d at 29. While Martinelli was suspended for a shift following the comment by Seznec, there is no evidence to link that suspension to his purported rebuffing of Seznec. Rather, the more likely explanation is that he was suspended for leaving the restaurant early without permission. Indeed, Michaels was also suspended for that same misconduct. Accordingly, defendant's motion for summary judgment with respect to the claims for quid pro quo sexual harassment will be allowed.

### c. Retaliation

Finally, Martinelli cannot prevail on his claims for retaliation under Title VII and Chapter 151B. The only adverse action to which he was allegedly subjected was the purported ostracism and some uncharacteristic aggressiveness on the part of Seznec immediately after he rebuffed her sexual comment.

While being subjected to a hostile or abusive work environment can constitute an adverse employment action sufficient to sustain a retaliation claim, the alleged misconduct here was not severe or pervasive for the same reasons already discussed. Other than the one complaint against Seznec, plaintiff never objected about any other sexual comments, inappropriate touching or other offensive conduct by the managers. Martinelli may have felt that the managers were ignoring or ostracizing him after he lodged the complaint against Seznec but mere rudeness or ostracism is insufficient to establish a retaliation claim under a theory of hostile or abusive work environment. Noviello, 398 F.3d at 92.

Moreover, plaintiff cannot establish a causal connection between the conduct of the managers and his complaint against Seznec. His only argument in that regard is that a generally uncomfortable atmosphere began after he lodged his complaint. Mere temporal proximity, however, is insufficient to establish the requisite causal connection. Martinelli has no specific

evidence that the managers other than Brackett even knew about his complaint against Seznec. Pomales, 447 F.3d at 85.

Even assuming that Martinelli's immediate reaction to Seznec's comment constitutes protected conduct (notwithstanding that he had not yet filed a complaint), he fails to show that her alleged aggressiveness that same day was sufficiently severe to create a hostile work environment. A supervisor chastising employees about music or assigning an extra shift is hardly abnormal, much less so objectively offensive that it would deter a reasonable person from engaging in protected activity. Nor does Martinelli allege that Seznec engaged in any other retaliatory conduct after he lodged his formal complaint against her.

The only other possible retaliatory conduct was the suspension that plaintiff incurred the day after the incident with Seznec. Martinelli cannot show, however, that his reaction to Seznec's comment was the but-for cause of that suspension. First, it was apparently another manager who decided to suspend Martinelli, not Seznec, and that decision was made before the manager even knew about the comment Seznec made to plaintiff. Second, both plaintiff and Michaels received the same suspension as a result of their failure to perform their closing duties on September 13, 2014, which suggests that Martinelli was not suspended for an improper purpose.

In summary, because Martinelli cannot establish a hostile work environment or that any of the alleged misconduct of Seznec or the other managers was causally linked to his protected activity, defendant's motion for summary judgment with respect to plaintiff's retaliation claims will be allowed.

**C.    Constructive Discharge**

While Martinelli does not specifically raise a claim for constructive discharge in his complaint, he alleges that he was forced to terminate his employment with The Bancroft as a result of the alleged hostile work environment.

To establish a claim for constructive discharge, a plaintiff must demonstrate that he was subjected to conditions "so severe and oppressive" that a reasonable person in that position would have been compelled to resign. Ara v. Tedeschi Food Shops, Inc., 794 F. Supp. 2d 259, 264 (D. Mass. 2011) (quoting Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003)); see also EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 134-35 (1st Cir. 2014) (holding that the plaintiff failed to establish a claim for constructive discharge where the employee had other opportunities to resolve her issues with her employer and thus termination was not her only reasonable choice).

For the same reasons that Martinelli cannot prevail on his claims for hostile work environment, he cannot establish that he

was constructively discharged. A reasonable person in Martinelli's position would not have felt that the alleged ostracism and general uncomfortable environment was so severe and oppressive as to compel him or her to resign. Indeed, Martinelli had an opportunity to address his perceived ostracism by submitting complaints to Human Resources or speaking to the managers directly. He did not do so. Termination was not plaintiff's only reasonable alternative.

## ORDER

Accordingly, defendant's motion for summary judgment (Docket No. 22) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton<br>
Nathaniel M. Gorton<br>
United States District Judge

Dated February 22, 2019